IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 2, 2017

IN RE C.J.B., ET AL.

Appeal from the Juvenile Court for Franklin County
No. 2015-JV-115    Thomas C. Faris, Judge

_____

No. M2016-01585-COA-R3-PT

_____

This is a termination of parental rights case.  The Department of Children's Services filed a petition to terminate the parental rights of C.F.B. (mother) and J.W.B (father) with respect to their two children, C.J.B. and C.C.B.  As to mother, the trial court found clear and convincing evidence of four grounds supporting termination.  By the same quantum of proof, the trial court found that termination of mother's rights is in the best interest of the children.  As to father, the trial court found clear and convincing evidence of three grounds supporting termination.  By the same standard of evidence, the trial court found that termination of father's rights is in the best interest of the children.  Mother and father appeal.  As modified, we affirm.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Juvenile Court
Affirmed as Modified; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which W. NEAL MCBRAYER and ARNOLD B. GOLDIN, JJ., joined.

Robert Floyd Davis, Winchester, Tennessee, for the appellant, C.F.B.

Glen A. Isbell, Winchester, Tennessee, for the appellant, J.W.B.

Herbert H. Slatery III, Attorney General and Reporter, and W. Derek Green, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

**OPINION**

# I.

The children were born in 2006 and 2009 respectively, and each child is autistic. In 2011, the children were first removed from the parents' home into DCS custody. The trial court found the children to be dependent and neglected due to lack of supervision, domestic assault, and alcohol abuse. The children eventually returned to the parents' home.

In July 2014, the children were again removed from the parents' home. At that time, DCS responded to a referral that the children had been locked in their bedroom for hours. Upon investigation, DCS found the children locked in their room with human feces on the floor and the walls. On July 17, 2014, the trial court entered a protective custody order and placed the children in the temporary legal custody of DCS.

On August 7, 2014, DCS developed the first of four permanency plan for the parents. Each plan required the parents to do the following: (1) resolve all current legal charges and not acquire any new charges; (2) get an alcohol and drug assessment and follow recommendations; (3) gain knowledge on services to assist with the children's developmental delay; (4) submit to random drug screens; (5) get mental health assessments and follow all recommendations; and (5) gain knowledge on the effects of domestic violence.

Based on the events leading to the last removal of the children, the parents were charged with aggravated child abuse. On August 28, 2014, due to those pending charges, the trial court entered an order suspending the parents' visitation with the children. In September 2015, mother and father each pleaded guilty to two counts of felony child neglect. Mother was sentenced to four years to be served in community corrections. Father was sentenced to six years and ordered to serve eighteen days in jail and the remainder in community corrections.

In October 2014, the trial court found the children to be dependent and neglected. On December 17, 2015, DCS filed a petition to terminate the parents' parental rights. In its petition, DCS alleged ground for termination of mother's rights: (1) abandonment by incarcerated parent pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv); (2) severe child abuse pursuant to Tenn. Code Ann. § 36-1-113(g)(5) and 37-1-102(b)(22); (3) substantial noncompliance with the permanency plans pursuant to Tenn. Code Ann. §§ 36-1-113(g)(2) and 37-2-403(a)(2); (4) persistence of conditions pursuant to Tenn. Code Ann. § 36-1-113(g)(3); and (5) failure to provide a suitable home pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(ii). In the same petition, DCS alleged grounds for terminating father's rights: (1) severe child abuse pursuant to Tenn. Code Ann. § 36-1-113(g)(5) and 37-1-102(b)(22); (2) substantial noncompliance with the permanency plans pursuant to Tenn. Code Ann. §§ 36-1-113(g)(2) and 37-2-403(a)(2); (3) persistence of conditions pursuant to Tenn. Code Ann.

§ 36-1-113(g)(3); and (4) failure to provide a suitable home pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(ii). DCS also asserted that termination of mother's rights and father's rights is in the best interest of the children.

On June 29, 2016, the trial court entered a final judgment terminating mother's and father's parental rights. As to mother, the court found that there is clear and convincing evidence of abandonment by an incarcerated parent, severe child abuse, substantial noncompliance with the permanency plans, and persistence of conditions. As to father, the court found clear and convincing evidence of severe child abuse, substantial noncompliance with the permanency plans, and persistence of conditions. However the court determined that DCS had not met its burden of proving failure to provide a suitable home by mother or father. The court found clear and convincing evidence that termination of mother's and father's rights is in the best interest of the children. Mother and father appeal.

## II.

On appeal, mother and father each challenge the trial court's finding of clear and convincing evidence supporting grounds for terminating their rights. They also challenge the trial court's finding, said to be made by clear and convincing evidence, that termination of their parental rights is in the best interest of the children.

## III.

A parent has a fundamental right, based on both the federal and state constitutions, to the care, custody, and control of his or her child. *Stanley v. Ill.*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996). While this right is fundamental, it is not absolute. The State may interfere with a parent's rights in certain circumstances. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has listed the grounds upon which termination proceedings may be brought. Tenn. Code Ann. § 36-1-113(g). Termination proceedings are statutory, *In re Angela E.*, 303 S.W.3d at 250; *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004), and a parent's rights may be terminated only where a statutory basis exists. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In the Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted).

Unlike the preponderance of the evidence standard, "[e]vidence satisfying the clear and convincing standard establishes that the truth of the facts asserted is highly probable." *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005).

Once a ground for termination is established by clear and convincing evidence, the trial court conducts a best interest analysis. *In re Angela E.*, 303 S.W.3d at 251 (citing *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005)). "The best interest[ ] analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *Id.* at 254. The existence of a ground for termination "does not inexorably lead to the conclusion that termination of a parent's rights is in the best interest of the child." *In re C.B.W.*, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App., filed June 26, 2006).

We are required to review all of the trial court's findings with respect to grounds and best interest. *In re Carrington*, 483 S.W.3d 507, 525-26 (Tenn. 2016) ("[W]e hold that in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interest[ ], regardless of whether the parent challenges these findings on appeal.")

The Supreme Court has stated our standard of review:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*Id.* at 523-24 (internal citations omitted). "When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are

- 4 -

involved, considerable deference must be accorded to . . . the trial court's factual findings." *In re Adoption of S.T.D.*, No. E2007-01240-COA-R3-PT, 2007 WL 3171034, at \*4 (Tenn. Ct. App., filed Oct. 30, 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co., Inc.*, 984 S.W.2d 912, 915 (Tenn. 1999)).

## IV.

### A.

As previously noted, DCS sought to terminate mother's parental rights on the basis of abandonment by an incarcerated parent. Tenn. Code Ann. § 36-1-113(g)(1) allows a court to terminate a parent's rights when the parent has abandoned the child as defined in Tenn. Code Ann. § 36-1-102. Abandonment by an incarcerated parent occurs when

> [a] parent . . . is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent . . . has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's . . . incarceration, or the parent . . . has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(iv).

The trial court found clear and convincing evidence supporting this ground for termination. In its ruling, the trial court stated as follows: "I find that there was eight months of jail on the part of the mother and I find that that fits and I uphold that ground." In the final judgment of termination, the court concluded that

> [mother] abandoned her children . . . . Evidence was introduced of criminal convictions of [mother] in 2013, 2014, and 2015, in three separate counties due to her willful criminal acts. Her testimony was that she was in jail too long to undertake compliance with the permanency plan until June 22, 2015, when she was released from her most recent incarceration.

In its brief, DCS concedes that this ground is not applicable to mother. DCS notes

that, because the termination petition was filed on December 17, 2015, the relevant four-month period began on August 17, 2015 and continued until December 16, 2015. DCS acknowledges that the trial court found that mother's most recent incarceration ended on June 22, 2015. Because mother was not incarcerated during the period from August 17, 2015 to December 16, 2015, the ground of abandonment by incarcerated parent is not implicated by the facts. We hold, as a matter of law, that there is not clear and convincing evidence to support termination of mother's rights due to abandonment by an incarcerated parent. We modify the trial court's order to delete the ground of abandonment by an incarcerated parent.

**B.**

The trial court found clear and convincing evidence supporting termination of mother's and father's parental rights on the ground of severe child abuse. Tenn. Code Ann. § 36-1-113(g)(4) provides that a court may terminate a parent's rights based upon the following:

> The parent . . . has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights . . . to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent . . . .

Tenn. Code Ann. § 37-1-102(b)(22) defines severe child abuse as

> (A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death;
>
> > (ii) "Serious bodily injury" shall have the same meaning given in § 39-15-402(d).
>
> (B) Specific brutality, abuse or neglect towards a child that in the opinion of qualified experts has caused or will reasonably be expected to produce severe phychosis, severe neurotic disorder, severe depression, severe developmental delay or intellectual disability, or severe impairment of the child's ability to function adequately in the child's environment, and

the knowing failure to protect a child from such conduct;

(C) The commission of any act towards the child prohibited by §§ 39-13-502, 39-13-504, 39-13-515, 39-13-522, 39-15-302, 39-15-402, and 39-17-1005 or the knowing failure to protect the child from the commission of any such act towards the child[.]

Tenn. Code Ann. § 39-15-402(d) provides that "serious bodily injury"

includes, but is not limited to, second- or third-degree burns, a fracture of any bone, a concussion, subdural or subarachnoid bleeding, retinal hemorrhage, cerebral edema, brain contusion, injuries to the skin that involve severe bruising or the likelihood of permanent or protracted disfigurement, including those sustained by whipping children with objects.

In making its ruling, the trial court stated the following:

[T]he father was convicted of . . . felony child neglect, two counts, one for each of the children in question and got a total of six years in sentencing, three on each case, most of it on community corrections. . . . [T]he mother was convicted of felony child neglect as to both children and received two consecutive two-year sentences for a four-year term. So I think that without question is upheld as to the State.

The final judgment of termination states that this ground "is clearly and convincingly determined prima facie, by proper introduction of the conviction of the parties regarding crimes against the children, which necessitated the emergency removal of the children initially."

On appeal, however, DCS concedes that the ground of "severe child abuse" is not implicated by the evidence. In its brief, DCS states the following:

Parents were each sentenced to over two years in the Tennessee Department of Corrections for conduct against the children. But the record is devoid of a prior court order addressing whether that conduct constituted "severe child abuse" as required by Tenn. Code Ann. § 36-1-113(g)(5). Nor did the trial court make such a finding in its order terminating Mother and Father's parental rights, relying on the "prima facie" evidence of Parents' convictions for felony

- 7 -

child neglect under Tenn. Code Ann. § 39-15-401. But an act prohibited by Tenn. Code Ann. § 39-15-401 does not, in and of itself, qualify as severe child abuse.

We agree. The trial court failed to demonstrate how the evidence supports the ground of severe child abuse. The trial court only held that the prior crimes committed prima facie establish this ground. We disagree.

The statute under which the parents were convicted provides as follows:

Any person who knowingly abuses or neglects a child under eighteen (18) years of age, so as to adversely affect the child's health and welfare, commits a Class A misdemeanor; provided, that, if the abused or neglected child is eight (8) years of age or less, the penalty is a Class E felony.

Tenn. Code Ann. § 39-15-401(b). However, "abuse" or "neglect" within the meaning of Tenn. Code Ann. § 36-15-401(b) does not necessarily rise to the level of "severe child abuse" as defined by Tenn. Code Ann. § 36-1-102(b)(22).

The record lacks clear and convincing evidence to support a finding that mother's or father's actions are "likely to cause serious bodily injury or death" or fit the "specific brutality" prong of Tenn. Code Ann. § 37-1-102(b)(22). Furthermore, the felony child neglect charges are not listed in the prohibited acts under Tenn. Code Ann. § 37-1-102(b)(22)(C).

We agree with DCS on this issue. We hold, as a matter of law, that the ground of severe child abuse against mother and father is not supported by clear and convincing evidence. We modify the trial court's order to delete the ground of severe child abuse as to both parents.

## C.

### i.

Tenn. Code Ann. § 37-1-113(g)(2) allows a court to terminate a parent's rights when the parent has failed to substantially comply with the statement of responsibilities in a permanency plan. Our Supreme Court has stated that "[i]n the context of the requirements of a permanency plan, the real worth and importance of noncompliance should be measured by both the degree of noncompliance and the weight assigned to the requirement." *In re Valentine,* 79 S.W.3d 539, 548 (Tenn. 2002).

In its petition to terminate mother's rights and father's rights, DCS alleged the

following with regard to their substantial noncompliance with the permanency plans:

> The [parents] did not actively participate with in-home services, did not work to gain knowledge on available services to assist with [the children's] developmental delays. Have not shown any proof that they will provide a safe, drug and alcohol free home that will promote the growth and progress of the children. [The parents] have not provided the department with any proof of completing alcohol and drug assessment. [Father] regularly would not submit to random drug screens, [the parents] did not seek counseling to help with the domestic violence issues within the home to gain knowledge on how domestic violence affects the children and the family stability. [Father] has not maintained regular contact with DCS and work[ed] with DCS toward reunification of the family. [The parents] have not gotten mental health assessments and therefore could not follow recommendations. The mother's wanton disregard, resulting in her criminal activities created an irrational conclusion in father's mind that he would not undertake the permanency plan goals and objectives, until the mother was released from incarceration.

The trial court found clear and convincing evidence to terminate mother's and father's rights based upon substantial noncompliance with the permanency plans. The court found the following:

> [T]here was substantial non-compliance with the permanency plan and . . . the goals were reasonabl[y] related to the reason the children came into custody and the prevention of their safe return. . . . Credible testimony was heard that the goals/objectives were an Alcohol and Drug Assessment and follow through, mental health evaluation and addressing concerns, random drug screens, and to comply with in home services. Proof of compliance was to be given to DCS for proper monitoring and evaluation. Also, the parents were told that non-compliance could lead to termination of parental rights. The Court notes that the parties had counsel to assist in compliance with the plan as well.
>
> The Court finds no proof was tendered regarding compliance until this day of the termination proceedings. Further that the limited undertaking and compliance was too little too late and

failed to substantially address the concerns that were reasonably related to the issues preventing the children's safe return. The mother testified that she did not even begin on compliance until her release from incarceration upon June 22, 2015. [Father] testified that he refused to attempt reunification until the mother was released from incarceration. Credible testimony also heard to that effect from the DCS representative.

The father repeatedly refused drug screens or tested positive. He admitted to a four-year pain pill abuse problem. Yet he did not timely undertake treatment pursuant to the permanency plan of which he signed and had full knowledge and understanding.

The mother testified she had been incarcerated four or five times since the children came into state custody. Her testimony was that she was not able to undertake the permanency plan due to repeated willful incarceration until June 22, 2015. She did not provide proof of drug screening to DCS for monitoring that she stated she underwent with her parole officer.

**ii.**

In her brief, mother argues that "the trial court erred by not considering the introduction of the completion of out-patient intensive treatment for alcohol and drug abuse, certificate of completion of parenting class, and certificate of completion of alcohol and drugs DUI school services." The court's judgment, however, demonstrates that it did in fact consider the introduction of those items. The court noted that the proof of compliance was not submitted until the trial began. The court specifically found that mother's "limited undertaking and compliance was too little too late and failed to substantially address the concerns."

While mother completed out-patient treatment for alcohol and drug abuse, she did not start this program until September 20, 2015 and did not complete the program until February 7, 2016. Additionally, mother did not attend the alcohol and drugs DUI school services until September 2015. DCS developed the first permanency plan for mother in August 2014. While mother was incarcerated for some of the time following the development of the permanency plan, she was released from jail in June 2015 but did not start this program until September 2015. Mother failed to take any action for over a year from the time DCS developed the first permanency plan and for three months following her release from jail. It is clear that compliance was not a priority for mother, who could

have made arrangements for her classes to begin upon her release.

While mother completed parenting classes in February 2016, the completion of these classes was not a part of the permanency plan developed for her. Accordingly, this certificate of completion is not relevant to her compliance with the permanency plans.

One requirement in the permanency plans was for mother to refrain from obtaining criminal charges. Criminal charges were a persistent problem leading to the removal of the children, and this requirement should be given significant weight. The record demonstrates that mother obtained new criminal charge multiple times after the development of the permanency plan. Her failure to comply with this responsibility resulted in being incarcerated for months. These multiple incarcerations demonstrate mother's blatant disregard for the permanency plans. We hold, as a matter of law, that the evidence does not preponderate against the trial court's finding of clear and convincing evidence that mother failed to substantially comply with the permanency plans.

### iii.

In his brief, father argues that

> [t]he department never assisted the parents on how to deal with autistic children or provide[d] classes. The department has never provided family-support services . . . [and no one] from the department came to the home to assist with in-home services. The department has never assisted in counseling with the children or family counseling with the children.
>
>  . . . The caseworker . . . did not inform the parents where to go on any counseling for domestic violence. The parents were unable to attend any appointment with the children or do in-home counseling . . . due to the no contact order that was entered by the trial court on August 28, 2014.

Father's argument misses the mark. Tenn. Code Ann. § 36-1-113(g)(2) allows for termination when "[t]here has been substantial noncompliance *by the parent* . . . with the statement of responsibilities in the permanency plan[.]" (Emphasis added.) It is clear that the burden of substantial compliance is on the parent, not on DCS. Father's argument that DCS failed to assist them in completing certain tasks does not excuse his noncompliance with the permanency plans.

The record is clear that father failed to substantially comply with the permanency plans. After developing the permanency plans for father, he refused to work to complete

- 11 -

any of the responsibilities until mother was released from jail. While father wanted to work on the plans with mother, that does not excuse him from complying with his responsibilities under the plans. Father's completion of the plan was not contingent upon mother or completing the steps with mother. Father failed to show any sense of urgency in complying with the plans or make compliance a priority. Instead, he chose to wait for mother and take no action on his own.

The plans required father to submit to drug screens. Father, however, refused to take the drug screens. Instead, he often admitted that he would not pass the screen. Furthermore, there was no evidence that Father had completed an alcohol and drug assessment or evidence that he followed any recommendations of such assessment if one was in fact completed. Father failed to undergo domestic violence counseling, and his argument that DCS did not provided him information to complete the counseling does not excuse his noncompliance with this task.

Father failed to take the permanency plans seriously or make them a priority. The record is clear that father failed to substantially comply with the permanency plans that DCS developed for him. We hold, as a matter of law, that the evidence does not preponderate against the trial court's finding by clear and convincing evidence that father failed to substantially comply with the permanency plans.

## D.

### i.

Tenn. Code Ann. § 36-1-113(g)(3) allows a court to terminate parental rights when

> The child has been removed from the home of the parent . . . by order of a court for a period of six (6) months and:
>
> > (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent or parents . . . , still persist;
> >
> > (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or parents . . . in the near future; and
> >
> > (C) The continuation of the parent . . . and child

relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home[.]

The trial court found clear and convincing evidence to support the ground of persistence of conditions with respect to mother and father. The trial court found as follows:

> [T]he conditions persisted and there is little likelihood that these conditions will be remedied in the near future, and the children will be subjected to further abuse if returned. The facts have shown too little too late compliance, and not substantially undertaken or accomplished, to show this Court good faith efforts on their behalf for reunification. This has been shown through repeated incarceration, the same issues being unresolved, and refusal to work with DCS as the evidence has shown.

**ii.**

On appeal, mother argues that the trial court overlooked the fact that she had installed cameras and fixed the windows in the home. She further avers that her completion of out-patient treatment for alcohol and drug abuse, parenting class, and alcohol and drugs DUI school services demonstrates a change in the conditions leading to the removal of the children. We disagree.

The changes that mother describes do not remedy the conditions that led to the removal of the children. These changes by mother fail to demonstrate a lasting change that will make the home safe, stable, and permanent for the children. Mother has continued to accrue legal charges against her. These charges have involved drugs and alcohol, which is one of the problems that led to the removal of the children. Mother received her most recent DUI in 2016. She has denied any wrongdoing toward the children and has failed to take responsibility for her actions. She has failed to demonstrate that she has made substantive changes such that reunification is possible. We hold, as a matter of law, that the evidence does not preponderate against the trial court's finding of clear and convincing evidence supporting persistence of conditions as to mother.

**iii.**

On appeal, father makes no specific argument that the trial court erred in terminating his rights on the ground of persistence of conditions. As required by ***In re Carrington***, 483 S.W.3d at 525-26, we will still review this ground as to father.

- 13 -

Prior to the removal of the children, father struggled with drug abuse. Throughout this case, father has continued to struggle with this problem. Father often refused to take drug screens or admitted that he would fail the drug screen. The evidence does not demonstrate that he has taken appropriate action to remedy this condition. Father has failed to demonstrate his willingness to address this issue. Based on the record before us, the children's condition is likely to persist.

Father has not taken steps to learn about how to meet the needs of his autistic children. He has not taken the initiative to put himself in a position that he would be prepared to care for the children. He has failed to demonstrate that he can sufficiently meet their needs and that they will not be subject to further neglect. While father has made improvements to the home to make it safer for the children, this alone will not provide the safe, stable, and permanent home that the children need. The evidence does not demonstrate that there has been a substantive change in the conditions leading to removal of the children. We hold, as a matter of law, that the evidence does not preponderate against the trial court's finding of clear and convincing evidence supporting persistence of conditions as to father.

## E.

The trial court failed to find clear and convincing evidence to support termination of mother's or father's parental rights on the ground of failure to provide a suitable home. On appeal, DCS has not challenged the trial court's findings with respect to this ground. Accordingly, our review does not extend to this ground that was not sustained by the trial court nor appealed by DCS.[1]

## V.

## A.

Since we have found statutory grounds warranting the termination of mother's and father's parental rights, we now focus on whether termination is in the best interest of the children. When considering the issue of "best interest," we are guided by the following statutory factors as set forth in Tenn. Code Ann. § 36-1-113(i), which provides:

---

[1] *See In re P.T.F.*, No. E2016-01077-COA-R3-PT, 2017 WL 2536847, at *8 (Tenn. Ct. App., filed June 12, 2017) ("[W]e find that *In re Carrington H.* requires the Court of Appeals to review each ground of which the trial court found clear and convincing evidence supporting termination of the parent's rights. However, we do not read that decision to require the Court of Appeals to review those grounds for termination that the trial court found were not supported by clear and convincing evidence.").

In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:

(1)     Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interests to be in the home of the parent or guardian;

(2)     Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3)     Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4)     Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5)     The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6)     Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7)     Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8)     Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9)     Whether the parent or guardian has paid child support

consistent with the child support guidelines promulgated by
the department pursuant to § 36-5-101.

"The above list is not exhaustive[,] and there is no requirement that all of the factors must be present before a trial court can determine that termination of parental rights is in a child's best interest." ***State Dep't of Children's Servs. v. B.J.N.***, 242 S.W.3d 491, 502 (Tenn. Ct. App. 2007) (citing ***State Dep't of Children's Servs. v. P.M.T.***, No. E2006-00057-COA-R3-PT, 2006 WL 2644373, at *9 (Tenn. Ct. App., filed Sept. 15, 2006)). In addition, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." ***In re Marr***, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005) (citing ***White v. Moody***, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)).

## B.

### i.

The trial court, holding that termination of mother's and father's parental rights is in the best interest of the children, found as follows:

> The parents made too little late adjustment of circumstances after reasonable efforts were tendered by DCS. The Court does not hold against the parents' lack of visitation, as they were under a court order not to visit due to the egregious nature of circumstances as to why the children came into State custody. The Court finds difficulty finding there is a meaningful relationship between the children and the parents due to the underlying nature of the facts of removal and subsequent criminal convictions, to which they both pled guilty.
>
> The Court heard testimony that the children are special needs and that initially they were difficult to handle. Now they have adjusted, and the ongoing problems that the parents testified to, are not an issue. Further, the foster parent wishes to adopt.
>
> The parents have shown brutality and conducted criminal activity. This is proven by the criminal convictions. There is no proof of ongoing criminal activity, and no proof has been introduced determining physical environmental concerns. Further, the emotional status of the parents is of concern to the Court as there is a history of such. The child support issue is a wash as found by this Court. The Court finds clear

- 16 -

and convincingly that it is in the best interest of the children that the rights of the parents are terminated.

**ii.**

Mother argues that there was no testimony from the foster parents about the relationship between them and the children. She focuses on the fact that the DCS caseworker who testified did not have extensive involvement with the children and asserts that there was no other evidence that it is in the best interest of the children to terminate her rights. We disagree.

The fact that the foster parents did not testify or that the DCS caseworker who testified had limited involvement with the children do not discount the weight of the relevant factors regarding the best interest of the children. The record demonstrates that mother has not made an adjustment of circumstance, conduct, or conditions that would make it safe for the child to be in the home. While there have been some physical improvements to the home to make it safe, this does not overcome the substance abuse and criminal issues that will subject the children to potential danger. There has been no lasting adjustment that would make it reasonable to place the children with mother. It does not appear to us that mother would provide a home that is healthy, safe, and free from criminal activity and substance abuse. Mother has not demonstrated that she can mentally and emotionally handle providing adequate care and supervision to the children with special needs. Accordingly, we find that mother would unlikely be able to care for the children in a safe and stable manner.

At this time, there is not a meaningful relationship between mother and the children. Because of mother's actions leading to the removal of the children and criminal charges against her, she has been under a no-contact order. Her actions have hindered her ability to develop a relationship with the children. The record demonstrates that the children have been doing well in foster care. It appears that they have made significant progress from the time they were most recently removed from the home. We find that it would likely be detrimental to the children's emotional, psychological, and medical condition to change their caretaker and physical environment. Based on our analysis of these factors, we hold, as a matter of law, that termination of mother's parental rights is in the best interest of the children.

**iii.**

In arguing that it is not in the best interest of the children to terminate his rights, father focuses on the fact that he has taken measures to make the home safer for the children. He argues that "they have attempted to rectify why the children came into custody by" making these physical changes to the home.

Father's focus on changes to the physical environment of the home, however, is misplaced. While the changes in the physical environment would make it safer for the children to be in home, they need more than that. Father has failed to make a lasting adjustment to his circumstance, conduct, or conditions to make it safe for the children to be in his home. Throughout the course of this case, father has abused drugs. He often refused to take drug screens or admitted that he would fail the drug screen. He has not taken the initiative to address his issues so that it would be safe for the children to be in his home. It would not be in the best interest of the children to place them in home where there is criminal activity and alcohol and drug abuse. These children need a stable home, and the record demonstrates that father is unable to provide such an environment for them.

While father correctly notes that he could not form a lasting relationship with the children or maintain regular visitation or contact with the children due to the court order prohibiting him from doing so, his voluntary actions led to this situation. Father has a history of neglecting these children, as demonstrated by the felony child neglect charges to which he pleaded guilty. As discussed above, it would be detrimental to change the children's caretaker at this point. Changing the children's home and placing them with father would likely have a negative effect on their emotional, psychological, and medical condition. Father has failed to demonstrate his ability to provide the safe and stable home that the children need. We hold, as a matter of law, that termination of father's parental rights is in the best interest of the child.

## VI.

The judgment of the trial court is affirmed as modified. We modify the trial court's judgment so as to vacate so much of that judgment as holds that termination of mother's rights was proper under (1) Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv), abandonment by incarcerated parent and under (2) Tenn. Code Ann. §§ 36-1-113(g)(5) and 37-1-102(b)(22), severe child abuse. We also modify the trial court's judgment so as to vacate as much of that judgment as holds that termination of father's rights was proper under Tenn. Code Ann. §§ 36-1-113(g)(5) and 37-1-102(b)(22), severe child abuse. We affirm the trial court's judgment terminating mother's parental rights on the grounds of substantial noncompliance with the permanency plans and persistence of conditions. We affirm the trial court's judgment terminating father's parental rights on the grounds of substantial noncompliance with the permanency plans and persistence of conditions. The costs on appeal are assessed one-half to the appellant, C.F.B., and one-half to the appellant, J.W.B. This case is remanded for enforcement of the trial court's judgment, as modified, and for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE